IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JOSEPH GAITO,                              )
                                           )
                        Plaintiff          )
                                           )
        vs.                                )        Civil Action No. 08-1298
                                           )        Judge Donetta W. Ambrose/
BOARD OF PROBATION AND PAROLE; )            Chief Magistrate Judge Amy Reynolds Hay
and PATRICK COLLINS, Agent of said         )
Board;                                     )
                                           )
                        Defendants         )


**REPORT AND RECOMMENDATION**


**RECOMMENDATION**

        It is respectfully recommended that the complaint be dismissed for failing to state a claim

upon which relief can be granted.

**REPORT**

        Joseph Gaito ("Plaintiff") has filed a pro se civil rights suit, alleging that the Defendants

violated his rights under the United States Constitution as well as rights under the Pennsylvania

Constitution.  More specifically, on September 17, 2008, the Clerk's Office received what

Plaintiff captioned as a "petition for writ of mandamus," which the Court liberally construed as a

Section 1983 civil rights complaint, Dkt. [2], given that federal district courts have no

jurisdiction to issue writs of mandamus to State agencies/actors.  Noble v. Cain, 123 Fed.Appx.

151, 152 (5th Cir. 2005)("the remedy sought by Noble is in the nature of mandamus relief, which

is not available to federal courts to direct state officials in the performance of their duties and

functions"); <u>In re Jones</u>, 28 Fed.Appx. 133, 134  (3d Cir. 2002) ("Jones is not entitled to relief.

As stated above, she asks this Court to prohibit the State of Delaware from filing charges against

her. The federal courts, however, have no general power in a mandamus action to compel action,

or in this case inaction, by state officials."); <u>Nelson v. South Carolina Dept. of Probation, Parole</u>

<u>& Pardon Services</u>, 230 F.3d 1353 (Table), 2000 WL 1455672, at *1 (4th Cir. 2000)("we affirm

on the district court's reasoning that federal courts cannot issue writs of mandamus to compel

action by state officials or agencies.").

      At the time of the filing of this lawsuit, Plaintiff was incarcerated.  Dkt. [1-2](envelope

showing Plaintiff's return address to be that of SCI-Greene).  Plaintiff's motion for leave to

proceed IFP was granted, Dkt. [2],  and the civil rights complaint was filed, Dkt. [7].

Accompanying Plaintiff's motion for IFP was an attachment captioned as "Overall Summary of

Statement of Case."  Dkt. [3-1].  It also appears that Plaintiff attached to this Overall Summary,

an attempt to amend his complaint to add defendants and claims.  He sought to add the following

defendants:  Ms. Amy Lowry, employee of the Brownsville Personal Care Home; Donald Green,

Agent Collins's supervisor; the Brownsville Personal Care Home; Parole Agent Dennis Durka;

and Ms. Toni Roberts, a manager at the Brownsville Personal Care Home, which was where

Plaintiff had been residing and which, apparently, was the approved residence for Plaintiff by the

Board.

      The operative complaint, <u>i.e.</u>, Dkt. [7], essentially alleged that Plaintiff is on parole for

the rest of his life, based upon convictions for bank robbery and related offenses.  Plaintiff

apparently was released on parole in 1990 and had served 18 years of parole as of the time of the

events giving rise to this suit.

One of Plaintiff's conditions while on parole was that he not leave the State without permission.  Nevertheless, Plaintiff apparently left the Brownsville Personal Care home to go to Florida to live with his elderly sister.  Plaintiff rented a truck and a trailer for his car and began driving down to Florida, apparently without first completing the proper paper work to have the supervision of his parole transferred from Pennsylvania to Florida.  Plaintiff's sister was apparently contacted by the Pennsylvania Parole Board authorities who informed her that Plaintiff had left Pennsylvania without permission.   After Plaintiff arrived at his sister's home in Florida, she urged him to return to Pennsylvania via an airplane.  Plaintiff insisted on driving back.  As they were packing Plaintiff's rental car, Plaintiff alleges that his sister mistakenly packed into the car guns and ammunition.  He did not discover this fact, according to him, until he was well on his way back to Pennsylvania.

Upon Plaintiff's return to Pennsylvania, he apparently went back to Brownsville Personal Care home, whereupon the staff discovered the guns and ammunition and confiscated them, however, because he vociferously objected, they relented and permitted him to take the guns and ammunition out of the Personal Care home.  Plaintiff then apparently rented a storage space and placed the guns in the storage space.  At some point in time, shortly after his return to Pennsylvania, Plaintiff signed himself into a hospital for treatment, and Brownsville Personal Care Home staff informed the Parole Board authorities that Plaintiff had returned to Pennsylvania and was in the hospital and had brought back guns and ammunition with him.

Parole Agents Durka and Collins traveled to the hospital and arrested Plaintiff.  They then searched the rental car and discovered a receipt for a storage space to which they went and conducted a search thereof and discovered the weapons and ammunition that Plaintiff alleges

3

belonged to his sister.

Plaintiff received a hearing before the Board which revoked his parole and ordered him to serve some backtime, apparently as a technical parole violator.  Plaintiff complains that even though he served the necessary backtime, he has been denied reparole.  Plaintiff alleges that he is innocent of the technical parole violations and that his rights have been violated.

Plaintiff originally sued the Board and Agent Collins.  From the docket, it appears that no waiver of service form was ever executed by Defendant Collins.  However the Board executed a waiver of service.  Dkt. [26].  An attorney from the Pennsylvania Attorney General's Office entered her appearance on behalf of the Board and a "limited" appearance on behalf of Defendant Collins.

Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Dkt. [27], and a brief in support, Dkt. [28].  The Court ordered Plaintiff to file a response, Dkt. [29], which he did, Dkt. [30].  However, his response was mostly non-responsive to the arguments raised by the Defendants and sought to complain about the fact that although he was only ordered to serve six months of backtime in June 2008, which should have ended in December 2008, Plaintiff has still not been released.   The Court notes though that upon completion of backtime, it is within the discretion of the Board to reparole the prisoner at that time or not.  Conde v. Pennsylvania Bd. of Probation and Parole, 827 A.2d 418, 419 (Pa. 2003)("Appellant's additional claim of entitlement to release upon completion of service of his backtime, which was not rendered moot, states no basis for mandamus relief, since the determination at issue was within discretion of the Board. *Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287 (2001) (mandamus will not lie where substance of Board's discretionary action is subject of challenge)").

4

**Legal Standards**

In ruling on a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 95 (2007).  A complaint does not satisfy the requirements of Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (modifying longstanding 12(b)(6) standard set out in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009) (clarifying that Twombly standard not limited to antitrust context).

To survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must "make a 'showing' rather than a blanket assertion of an entitlement to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008).  In other words, he must supply "enough facts to raise a reasonable expectation that discovery" will reveal evidence supporting his claim.  Id. at 232 (quoting Twombly, 550 U.S. at 556 n.3).  The United States Court of Appeals for the Third Circuit has instructed:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Where the court is unable to infer more than a possibility of misconduct, the complaint does not "show" that the pleader

5

is entitled to relief.

In addition, because Plaintiff was, at the time of the filing of this civil action,[1] a prisoner and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein.  In addition, because he was a prisoner granted leave to proceed in forma pauperis to prosecute this suit, the screening provisions of 28 U.S.C. § 1915(e) also apply.  The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

**Discussion**

Plaintiff has named the Parole Board as one of the Defendants.  As the Parole Board correctly notes in its motion to dismiss, the Eleventh Amendment bars Plaintiff's suit against the Board.

The Board is entitled to sovereign immunity provided by the Eleventh Amendment. Harper v. Jeffries, 808 F.2d 281, 284 n.4 (3d Cir. 1986) ("it should be noted that any action by

---

[1]   See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies.");  Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

the appellant against the Parole Board is barred by the eleventh amendment. *See Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam ).”);  Mikolaicik v. Pennsylvania, No. 90-2209, 1990 WL 40834, at *1 (E.D. Pa. April 5, 1990)(“As for the claim against the Pennsylvania Board of Probation and Parole, the Eleventh Amendment bars any lawsuit against a state agency in a federal court. *See Will v. Michigan Police Department*, __ U.S. __, 109 S.Ct. 2304 (1989).”);  Canady v. Pa. Bd. of Probation and Parole, No. 88-7226, 1988 WL 127690, at *1 (E.D. Pa. Nov. 28, 1988)(“[p]laintiff's suit against the Pennsylvania Board of Probation and Parole is barred by the Eleventh Amendment. That constitutional provision bars a damage action against a state, or its agencies, in federal court. See Kentucky v. Graham, 105 S.Ct. 3099, 3107 (1985). Therefore, the Parole Board cannot be a named defendant in a §1983 lawsuit.  See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). Therefore, plaintiff's complaint against the Pennsylvania Board of Probation and Parole must be dismissed as frivolous pursuant to 28 U.S.C. § 1915(d).”). Moreover, the Eleventh Amendment bars suits in federal courts against the State or its alter-ego irrespective of the type of relief requested.  See Lavia v. Pennsylvania, Dep't of Corrections, 224 F.3d 190, 195 (3d Cir. 2000)(“the type of relief sought is irrelevant to the question of Eleventh Amendment immunity.”).

There are two exceptions to the Eleventh Amendment's immunity from suit.  Dill v. Oslick, No. Civ. A. 97-6753, 1999 WL 508675 (E.D. Pa. July 19, 1999).  They are: (1) where the State consents to be sued in federal court, and (2) where Congress has abrogated the immunity afforded by the Eleventh Amendment.  Id.  Neither Pennsylvania nor the Board has consented to be sued.  See id. at *3 (“Pennsylvania does not consent to suit in federal court.  See  42 Pa.C.S.A. S 8521(b).”).  Nor has Congress abrogated the immunity afforded to the Board by the Eleventh

Amendment.  See id.  ("Congress has not abrogated Eleventh Amendment immunity for any of plaintiff's federal claims" which included claims against Board employees in their official capacities.).  Because the Eleventh Amendment is applicable to Plaintiff's suit and no exceptions are available, even accepting Plaintiff's allegations as true, Plaintiff's complaint against the Board must be dismissed for failing to state a claim.

Plaintiff also named as a defendant, his parole agent, Mr. Collins.  His claims against Agent Collins primarily concern allegations that Agent Collins searched Plaintiff's rental car and storage locker and did so without a warrant or without probable cause, which allegedly violated Plaintiff's federal constitutional and state law rights.  The Defendants argue that the complaint fails to state a claim upon which relief can be stated because Plaintiff is wrong on the law that Agent Collins needed a warrant and or probable cause.  Rather, because Plaintiff was a parolee who had signed a parole agreement that reduced his expectation of privacy, and also reduced what society was willing to accept as a reasonable expectation of privacy given Plaintiff's status as a parolee, Agent Collins needed only reasonable suspicion to support the search of the rental car and locker and that the complaint, considered along with Plaintiff's own submissions, establish the existence of reasonable suspicion as a matter of law.  The Court agrees.

The Fourth Amendment generally prohibits searches and seizures absent a warrant supported by probable cause.  See, e.g., Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).  As the Court in Griffin explained: "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'  Although we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), we have permitted exceptions when 'special needs, beyond

the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" Id., at 873 (citations omitted).   While Griffin addressed probationers, the same reasoning applies to parolees.  See, e.g., U.S. v. Williams, 417 F.3d 373, 376 n.1 (3d Cir. 2005) ("Both *Knights* and *Griffin* both [sic] involved searches of probationers rather than parolees. But we have treated both situations identically because 'there is no constitutional difference between probation and parole for purposes of the fourth amendment'") (quoting, United States v. Hill, 967 F.2d 902, 909 (3d Cir.1992))(internal quotations omitted).

Our Court of Appeals expounded upon Griffin and noted that "[r]elying on *Griffin*, we have determined that Pennsylvania may empower a parole officer to conduct a warrantless search of a parolee's property based on reasonable suspicion that the parolee has violated a condition of parole. We have also concluded that a warrantless search is proper even after the parolee is in custody." U.S. v. Strickland, 237 Fed.Appx. 773, 777 (3d Cir. 2007)(citations omitted).  Thus, the standard required in order to justify  a parole officer conducting a search and seizure of a parolee's property is that of "reasonable suspicion" that the parolee is violating or has violated a condition of his parole.

Hence, Plaintiff's argument that Agent Collins's searches were accomplished without a warrant and not supported by probable cause, misses the mark.  It is irrelevant for federal constitutional purposes that these searches were conducted without a warrant and without probable cause, so long as the searches were supported by reasonable suspicion to believe that Plaintiff violated the conditions of his parole.  The complaint and other submissions by Plaintiff make it abundantly clear that Agent Collins possessed more than reasonable suspicion to conclude that Plaintiff had violated his parole conditions, including conditions requiring that

9

Plaintiff not possess a weapon, not leave the State without permission and not change his residence (i.e., Brownsville Personal Care Home).  Plaintiff's own complaint notes that although he thought that he had filed the applicable paperwork and/or paid the supervision transfer fee, he does not allege that he ever received the permission requested.  Rather he alleges only that Defendant Collins gave him wrong information.  See Dkt. [7] at 4 (Agent Collins "gave petitioner wrong, or improper facts and half truths to secure a state to state transfer.").  Moreover, Plaintiff does not deny that he possessed firearms.  Rather, he only claims that he possessed such inadvertently and decided to continue to possess them until he could figure out what to do with them.  In fact, when the Personal Care Home staff removed the weapons and ammunition, Plaintiff "raised such a fuss" that "they [i.e, the weapons and ammunition] were returned to petitioner."  Dkt. [7] at 5.  Moreover, all of this information had been provided to Agent Collins by the Personal Care Home staff.  See, e.g., Dkt. [3-1] at 6 ("Ms. Lowry made statements that were false which resulted in the plaintiff[']s arrest.").  Thus, information provided to Agent Collins prior to the searches, gave Agent Collins all the reasonable suspicion necessary to conclude that Plaintiff was violating or had violated the conditions of his parole.  Accordingly, the search did not violate any of Plaintiff's federal constitutional rights.

To the extent that Plaintiff sought to have his Overall Summary of the Case and the attachments thereto considered an amended complaint, even if we were to consider the "amended complaint" we note that pursuant to the PLRA screening provisions, the "amended complaint" should be dismissed for failing to state a claim.

We deal first with Plaintiff's allegations that the Defendants acted in a conspiracy.  See, e.g., Dkt. [3-1] at 15 ("they are part of an overall conspiracy with the Pennsylvania Board of

Probation and Parole to incarcerate this Plaintiff for the rest of his natural life.").  Because the allegations of conspiracy are conclusory, they fail to state a claim.  See e.g.,  Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'").  The requirement that conspiracy allegations not be conclusory is met "where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." Adams v. Teamsters Local 115, 214 Fed.Appx. 167, 175 (3d Cir. 2007).  Nor does this requirement that allegations of conspiracy be more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run afoul of the admonition in *Leatherman* .... Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that animates the fair notice requirement of the rule.").   Indeed, what the Court in Adams, said of the conspiracy allegations therein, applies equally herein, i.e., the conspiracy "allegation[s] do[] not provide any facts regarding the time, place, or conduct of the alleged conspiracy" and the allegations constitute "a conclusory statement that is insufficient to meet the [Plaintiff's] burden to state a claim for relief."  Adams, 214 Fed.Appx.at 176.  Hence, the conspiracy claims should be dismissed for failure to state a claim upon which relief can be granted.

Next we take up Plaintiff's claims against non-state actors.  Insofar as Plaintiff sought to sue the Brownsville Personal Care Home, Dkt. [3-1] at 13, Toni Roberts, the manager at the

Brownsville Personal Care Home, id. at 31,  and Amy Lowry, id. at 5, they are private, not state

actors, and so they do not act under "color of state law" and thus may not be sued for violating

Plaintiff's federal constitutional rights under Section 1983.  See, e.g., Bates v. Paul Kimball

Hosp., __ Fed.Appx.__, 2009 WL 3041989 (3d Cir. 2009).  This is true notwithstanding that

Plaintiff claims in a conclusory fashion that they conspired with the Parole Board agents.  Miles

v. Township of Barnegat, 343 Fed.Appx. 841, 845 (3d Cir. 2009)("A private action is not

converted into one under color of state law merely by some tenuous connection to state action[.]

In addition, the single-sentence conclusory allegations of a conspiracy contained in the Amended

Complaint are insufficient to allege a plausible conspiracy among the defendants to deprive the

Plaintiffs of their constitutional rights under § 1983.")(internal parentheses omitted).  While the

general rule is that private actors, acting in conspiracy with state actors, may be deemed to act

under color of state law, if the conspiracy allegations fail to state a claim then, *a fortiori*, the

complaint would also fail to allege action under state law against the private actors.  See, e.g.,

Stanwood v. Liberty Northwest Ins. Corp., 203 F.3d 832 (Table), 1999 WL 1044823, at  *1  (9th

Cir. 1999)("The district court properly found that Stanwood failed to state a claim against Liberty

Northwest Insurance Corp., McGavick, Walker, Braun, Bank of America, and Fidelity Collection

Service because as private parties, they were not acting under color of state law, *see Price v.

Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991), and because Stanwood failed to sufficiently allege

a conspiracy, *see United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.

1989) (en banc) (holding to establish a conspiracy under 42 U.S.C. § 1983, plaintiff must allege

an 'agreement or meeting of the minds' between the state and private parties)."); Boyer v. Peters,

No. 1:06-cv- 00012, 2006 WL 2560733 (E.D.Cal. Sept. 5, 2006)(dismissing claims against

private actors notwithstanding allegations of conspiracy where the allegations of conspiracy were

that the parties conspired to take the plaintiff's property and the property was properly taken

pursuant to a state court judgment, and so the conspiracy allegations were barred under the

Rooker-Feldman doctrine, barring federal courts from acting as appellate courts to state court

judgments).

Plaintiff also apparently sought to sue Supervisor Donald Green of the Parole Board, Dkt.

[3-1] at 8, and Parole Agent Durka, id. at 21.   For example, Plaintiff alleged that Supervisor

Green "failed to have an examination for plaintiff's mental competency before any parole hearing

was held. . . . Plaintiff contends that if Supervisor Green knew that plaintiff . . . was incompetent

enough to put him in a personal Care home, then he must also have know[n] the plaintiff was

incompetent when the [parole] violation occurred . . . and also at the subsequent parole

hearing[.]"  Dkt. [3-1] at 10.  Plaintiff alleged that Agents Durka and Collins "conspired . . . to

plead this plaintiff guilty at his parole hearing.  Each agent made false statements on their reports

causing this plaintiff prejudice, emotional distress, and helped convict an innocent person to be

incarcerated."  Dkt. [3-1] at 24.

We find Plaintiff's allegations against Defendants Durka and Green, as well as most of

Plaintiff's allegations against the other defendants added in the "amended complaint," to be

barred under  Heck v. Humphrey, 512 U.S. 477 (1994).  Heck holds that

> in order to recover damages for allegedly unconstitutional
> conviction **or imprisonment**, or for other harm caused by actions
> whose unlawfulness would render a conviction **or sentence**
> invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized to
> make such determination, or called into question by a federal

13

court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.   A
claim for damages bearing that relationship to a conviction or
sentence that has *not* been so invalidated is not cognizable under §
1983.

Heck 512 U.S. at 486-87 (emphasis added)(footnote omitted).  Here, it is clear that if Plaintiff

were successful in his claims that the Defendants "conspir[ed] with the Pennsylvania Board of

Probation and Parole to incarcerate this Plaintiff for the rest of his natural life", Dkt. [3-1] at 15,

and/or that the Defendants "conspired . . . to violate and incarcerate an[] innocent person", Dkt.

[3-1] at 33, as well as his contentions that he was incompetent at that time of the parole

revocation hearing,[2] he would be necessarily calling into question the validity of his parole

revocation.

Such challenges to his parole revocation are barred by Heck.  See, e.g., Ali v. Hubbard,

125 F.3d 841 (Table), 1997 WL 556293 (1st Cir. 1997); Crow v. Penry, 102 F.3d 1086, 1087

(10th Cir. 1996)(Heck "applies to proceedings that call into question the fact or duration of parole

or probation."); White v. Gittens, 121 F.3d 803, 806 (1st Cir. 1997)("A § 1983 suit like the

present, contending that a state parole revocation was constitutionally invalid, challenges the

'fact or duration of [the plaintiff's] confinement'" and is barred by Heck);  McGrew v. Texas Bd.

Of Pardons and Paroles, 47 F.3d 158, 161 (5th Cir. 1995)("Because an action attacking the

validity of parole proceedings calls into question the fact and duration of confinement, it must

satisfy the *Heck* element") (footnote omitted); Schafer v. Moore, 46 F.3d 43 (8th Cir. 1995).  Cf.

---

[2]  See, e.g., Seidel v. Powers, No. CV 06-4638, 2009 WL 365761 (C.D.Cal. Feb. 11,
2009)(apparently assuming that incompetence at a parole revocation hearing would render it void but
finding the habeas petitioner therein did not establish he was incompetent at the parole revocation
hearing).

14

<u>Miller v. Indiana Dep't of Corrections</u>, 75 F.3d 330, 331 (7th Cir. 1996)("The reasoning of *Heck v. Humphrey* is that a prisoner should not be able to use a suit for damages to get around the procedures that have been established for challenging the lawfulness of continued confinement. It is irrelevant whether the challenged confinement is pursuant to a judgment imposing a sentence or an administrative refusal to shorten the sentence by awarding good-time credits.").  This understanding of <u>Heck</u> has been applied in this Circuit.  <u>See</u>, <u>e.g.</u>,  <u>Bierley v. Dombrowski</u>, 309 Fed.Appx. 594, 597 (3d Cir. 2009)("Through his claims related to his parole revocation in September and October 2005, subsequent imprisonment, and associated fees, fines, and costs, he is attempting to challenge the fact or duration of a conviction or sentence. Under *Heck v. Humphrey*, Bierley cannot bring such a challenge unless he can show that his conviction or sentence has been invalidated. Although Bierley noted that a summary conviction of his was reversed on appeal, he did not allege that a relevant parole revocation decision was ever overturned or declared invalid.")(citations omitted);  <u>Nellom v. Luber</u>, No. Civ.A. 02-2190, 2004 WL 816922, at *7 (E.D. Pa., March 18, 2004) ("claims, which are based on the Parole Board Defendants' decisions, necessarily challenge the fact or length of Plaintiff's confinement. To the extent that Plaintiff seeks injunctive relief regarding the duration of his sentence, he may pursue such claims only in a petition for writ of habeas corpus. To the extent that Plaintiff seeks monetary damages for these actions under § 1983, the Supreme Court's decision in *Heck*, 512 U.S. 477, and the cases that have followed, bar Plaintiff's claims."), *appeal dismissed*, 119 Fed.Appx. 428 (3d Cir. 2004).  We are bolstered in our conclusion that Plaintiff's suit necessarily challenges the validity of his parole revocation and continued confinement by Plaintiff's repeated request in his prayers for relief to be released immediately from his unlawful incarceration and/or

for damages for his "unlawful incarceration."  Dkt. [3-1] at 7; 12; 17; 20; 25; 30 & 34.

Accordingly, Plaintiff's "amended complaint" should be dismissed for failure to state a claim

upon which relief can be granted because it is barred by Heck.

       To the extent that Plaintiff is making any claims in the "amended complaint" that are not

barred by Heck, or have not otherwise been addressed thus far, the Court finds that the "amended

complaint" fails to state a claim upon which relief can be granted under Twombly because the

allegations of the "amended complaint" simply lack the "heft" under Twombly to carry Plaintiff's

claims from the possible to the plausible.  Twombly,  550 U.S. at 557 (explaining that "Rule

8(a)(2) [requires]  that the 'plain statement' possess enough heft to 'sho[w] that the pleader is

entitled to relief.'").   Moreover, any further amendment of the "amended complaint" at this point

would be futile.

       To the extent that Plaintiff is seeking to invoke this Court's supplemental jurisdiction in

order to sue the Defendants for violations of his state created rights, it is recommended that the

Court decline to exercise supplemental jurisdiction over the state law claims given that all federal

law claims should be dismissed for failure to state a claim upon which relief can be granted.  See,

e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997) ("where federal

claims are dismissed before trial, the district court 'must decline to decide the pendent state

claims unless considerations of judicial economy, convenience, and fairness to the parties

provide an affirmative justification for doing so.'") (quoting Borough of West Mifflin v.

Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).  See also 28 U.S.C. § 1367(c)(3) which permits a

district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it]

has dismissed all claims over which it has original jurisdiction...."  Here, the appropriate

16

considerations do not provide an affirmative justification for retaining supplemental jurisdiction and deciding matters of state law.

For the above stated reasons, the district court should dismiss the action upon Plaintiff's failure to state a claim upon which relief can be granted.  Further, the district court should decline to exercise supplemental jurisdiction over any state law claims.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry, reflecting the filing of this Report and Recommendation, a copy of which docket entry is being mailed to Plaintiff along with the Report.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 24 February, 2010

cc:     The Honorable Donetta W. Ambrose
        United States District Judge

        Joseph Gaito
        AP-2274
        SCI Waynesburg
        175 Progress Drive
        Waynesburg, PA 15370

        All Counsel of Record via CM-ECF